**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| VIDA GUERRA, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. TDC-24-03431 |
| | * | |
| ERICK & EDWIN, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*

## <u>REPORT AND RECOMMENDATIONS</u>

This "Report and Recommendations" addresses the "Plaintiffs' Motion for Default Judgment" ("the Motion"), filed by Plaintiffs Vida Guerra, Ursula Mayes, Claudia Sampedro, Jamillette Gaxiola, Paola Cañas, Cora Skinner and Jaime Edmondson Longoria (collectively "Plaintiffs"). (ECF No. 14). In the Motion, Plaintiffs seeks entry of default judgment against Erick and Edwin, Inc. d/b/a Taco Mex Restaurant a/k/a Taco Mex. ("Defendant Erick & Edwin" or "Defendant") (*Id.*). Pursuant to 28 U.S.C. § 636 and Local Rule 301, the Honorable Theodore D. Chuang referred this matter to me to author a report and to make recommendations. (ECF No. 15).

No response has been filed to the Motion, and the time for responding has passed. *See* Local Rule 105.2 (D. Md. Dec. 1, 2025). I have considered that fact, and the fact that the Defendant has not taken any action to defend against Plaintiffs' Complaint nor moved to set aside the entry of default against it. *See* ECF No. 7. I do not believe that a hearing is necessary. Local Rule 105.6 (D. Md. Dec. 1, 2025).

For the reasons set forth below, I ultimately recommend that the Motion, (ECF No. 14), be granted in part and denied in part.

## I.     BACKGROUND

### A. Factual Background[1]

#### 1.  Plaintiffs' Background

Plaintiffs are seven "well-known" professional models who hail from Arizona, California, Florida, Nevada, and Texas. (ECF No. 1, "Complaint," ¶¶ 10-16). Each earns her living "modeling and licensing her Images to companies, magazines, and individuals for the purpose of advertising products and services." (Complaint, ¶ 19).  Their careers in the modeling industry "place a high degree on their good will and reputation, which is critical to maximizing their earning potential, book modeling contracts, and establish each of their individual brands." (Complaint, ¶ 20). To establish and maintain their brands, "Plaintiffs are necessarily selective concerning the companies, and brands, for which they model." (*Id.*).

#### a.  Vida Guerra

Plaintiff Vida Guerra ("Ms. Guerra") resides in Los Angeles County, California. (Complaint, ¶ 10). Ms. Guerra first gained national exposure when she appeared in a magazine lingerie spread in December 2002. (Complaint, ¶ 26). From December 2002 through 2005, Ms. Guerra has been featured in several other magazines, made multiple appearances on various English and Spanish language television programs, music videos, a commercial, and a film. (*Id.*). Ms. Guerra also "lent her voice" to a video game. (*Id.*). She has produced her own swimsuit calendars and DVDs, including a DVD in 2006 that bears her name. (*Id.*). Ms. Guerra's services as a spokeswoman for fitness and in other areas continue to be "extremely in demand." (*Id.*). She has "over 875,400 followers across Instagram and Twitter." (*Id.*).

---

[1] Because this case is before the district court on a motion for entry of default judgment, the undersigned accepts as true only the well-pled facts that are set forth in the Complaint, except those related to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001).

According to Ms. Guerra, "[t]hat we know of, [she] is depicted in the photo in Exhibit 'A' to promote Taco Mex Restaurant ("Taco Mex") on its Facebook page." (Complaint, ¶ 27). The image "was intentionally altered to make it appear that Guerra was either an employee working at Taco Mex, that she endorsed Taco Mex, or that she was otherwise associated or affiliated with Taco Mex." (*Id.*). Ms. Guerra has never worked at or been affiliated with Taco Mex, nor has she been associated with the restaurant or its nightclub. (Complaint, ¶ 28). She has never been compensated for the Defendant's "unauthorized use of her Image," and she has suffered damages- and will continue to do so-because of the unauthorized use." (*Id.*). *See also* ECF No. 1-1 ("Exhibit A").

b.  Ursula Mayes

Plaintiff Ursula Mayes ("Ms. Mayes") resides in Orange County, California. (Complaint, ¶ 11). Ms. Mayes' career as a model started when her photos won "first place in prestigious photography awards" and she was featured in a magazine spread. (Complaint, ¶ 29). Ms. Mayes went on to appear in several television programs (e.g., The Tonight Show, the Jay Leno Show), magazine advertisements and advertisements for multiple companies (e.g., Subaru, Coronet Diamonds, Vogue, Elle, In Style), and was the "cover model" for a videogame. (*Id.*). Ms. Mayes has modeling contacts with model and talent agencies and a contract as an actress. (*Id.*).

According to Ms. Mayes, "[t]hat we know of, [she] is depicted in the photo in Exhibit 'B' to promote Taco Mex on its Facebook page."  (Complaint, ¶ 30).   The image "was intentionally altered to make it appear that Mayes was either an employee working at Taco Mex, that she endorsed Taco Mex, or that she was otherwise associated or affiliated with Taco Mex." (*Id.*). Ms. Mayes has never worked at or been affiliated with Taco Mex, nor has she been associated with the restaurant or its night club. (Complaint, ¶ 31). She has never been compensated for the Defendant's

"unauthorized use of her Image," and she has suffered damages-and will continue to do so-because of the unauthorized use." (*Id.*). *See also* ECF No. 1-2 ("Exhibit B").

### c.   Claudia Sampedro

Plaintiff Claudia Sampedro ("Ms. Sampedro") resides in Miami-Dade County, Florida.[2] (Complaint, ¶ 12). Ms. Sampedro's career began when she was 16 years old. (Complaint, ¶ 32). She has appeared in many magazine catalogues and editorials, and has cover credits for several magazines. (*Id.*). Ms. Sampedro is a "sponsored model for Nutri Sups Nutrition" as well as a "spokesmodel and contracted model for Bare Ava." (*Id.*). She is married to a former "star" football player and has three children. (*Id.*). Ms. Sampedro is in the "Social Media Influencers top class" with "over one million Instagram followers and a further combined 150,000 fans on Facebook and X […]." (*Id.*).

According to Ms. Sampedro "[t]hat we know of, [she] is depicted in the photo in Exhibit 'C' to promote Taco Mex on its Facebook page." (Complaint, ¶ 33).  The image "was intentionally altered to make it appear that Sampedro was either an employee working at Taco Mex, that she endorsed Taco Mex, or that she was otherwise associated or affiliated with Taco Mex." (*Id.*). Ms. Sampedro has never worked at or been affiliated with Taco Mex, nor has she been associated with the restaurant or its nightclub. (Complaint, ¶ 34). She has never been compensated for the Defendant's "unauthorized use of her Image," and she has suffered damages-and will continue to do so-because of the unauthorized use." (*Id.*). *See also* ECF No. 1-3 ("Exhibit C").

### d.   Jamillette Gaxiola

Plaintiff Jamillette Gaxiola ("Ms. Gaxiola") resides in Clark County, Nevada. (Complaint, ¶ 13). She began her career as a teenager and at 18 years old was named "Miss Cuba," and became

---

[2] The Complaint incorrectly lists Miami-Dade County as a county in California. (Complaint, ¶ 12).

"popular among fashion designers and magazines." (Complaint, ¶ 35). She is now a sports personality representing as "the current face of UFC," having first being involved in beauty, then fashion, then TV. (*Id.*). She has worked for designer brands including Reebok, Guess Jeans, Victoria's Secret, Nike, and MAC Cosmetics. (*Id.*). Ms. Gaxiola is active in social and charitable causes, one of which is to "help young women deal with self-esteem issues." (*Id.*). In addition, Ms. Gaxiola is involved with Miss Cuba international beauty pageants. (*Id.*). On Instagram, Ms. Gaxiola has over 200,000 followers. (*Id.*).

According to Ms. Gaxiola, "[t]hat we know of, [she] is depicted in the photo in Exhibit 'D' to promote Taco Mex on its Facebook page." (Complaint, ¶ 36). The image "was intentionally altered to make it appear that Gaxiola was either an employee working at Taco Mex, that she endorsed Taco Mex, or that she was otherwise associated or affiliated with Taco Mex." (*Id.*). Ms. Gaxiola has never worked at or been affiliated with Taco Mex, nor has she been associated with the restaurant or its nightclub. (Complaint, ¶ 37). She has never been compensated for the Defendant's "unauthorized use of her Image," and she has suffered damages-and will continue to do so-because of the unauthorized use." (*Id.*). *See also* ECF No. 1-4 ("Exhibit D").

e.   Paola Cañas

Plaintiff Paola Cañas ("Ms. Cañas") resides in Miami-Dade County, Florida. (Complaint, ¶ 14). Ms. Cañas has over twelve years of experience, and has "found great success as a model, host, runway model, and actress." (Complaint, ¶ 38). She has appeared on a magazine cover, and has worked with several international brands and labels, "continues to build an impressive profile," and her services are "in high demand" across several cities. (*Id.*). She has been a contracted model for a lingerie line. (*Id.*). Ms. Cañas was the face of a couple of sporting events, and has appeared on several television networks (e.g., Telemundo and TV Azteca) and programs. (*Id.*). She has over

one million followers on Instagram, and is in "high demand." (*Id.*).

According to Ms. Cañas, "[t]hat we know of, [she] is depicted in the photo in Exhibit 'E' to promote Taco Mex on its Facebook page." (Complaint, ¶ 39).  The image "was intentionally altered to make it appear that Cañas was either an employee working at Taco Mex, that she endorsed Taco Mex, or that she was otherwise associated or affiliated with Taco Mex." (*Id.*). Ms. Cañas has never worked at or been affiliated with Taco Mex, nor has she been associated with the restaurant or its nightclub. (Complaint, ¶ 40). She has never been compensated for the Defendant's "unauthorized use of her Image," and she has suffered damages-and will continue to do so-because of the unauthorized use." (*Id.*). *See also* ECF No. 1-5 ("Exhibit E").

      f.  <u>Cora Skinner</u>

Plaintiff Cora Skinner ("Ms. Skinner") resides in Travis County, Texas, and is a model and an actress. (Complaint, ¶¶ 15, 41). Ms. Skinner has modeled for several brands, has made appearances on several television programs (e.g., The Tonight Show with Jay Leno and CSI Miami), and has appeared in music videos. (Complaint, ¶ 41). She has modeled from brands like Nordstrom, Sketcher, Tecate and Skky Vodka, and is the cofounder of Araya Visors. (*Id.*). She has "79,500 [] Instagram followers." (*Id.*).

According to Ms. Skinner, "[t]hat we know of, [she] is depicted in the photo in Exhibit 'F' to promote Taco Mex on its Facebook page." (Complaint, ¶ 42).  The image "was intentionally altered to make it appear that Skinner was either an employee working at Taco Mex, that she endorsed Taco Mex, or that she was otherwise associated or affiliated with Taco Mex." (*Id.*). Ms. Skinner has never worked at or been affiliated with Taco Mex, nor has she been associated with the restaurant or its nightclub. (Complaint, ¶ 43). She has never been compensated for the Defendant's "unauthorized use of her Image," and she has suffered damages-and will continue to

6

do so-because of the unauthorized use." (*Id.*). *See also* ECF No. 1-6 ("Exhibit F").

g.   Jaime Edmonson Longoria

Plaintiff Jaime Edmonson Longoria ("Ms. Longoria") resides in Maricopa County, Arizona. (Complaint, ¶ 16).  She previously worked as a police officer before quitting to become a cheerleader with the Miami Dolphins. (Complaint, ¶ 44). Ms. Longoria has appeared in several magazines, television programs, music videos, radio programs, online outlets, and a documentary. (*Id.*). Ms. Longoria was "Playmate of the Month" and is a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio." (*Id.*). In addition, Ms. Longoria has three children with her "MLB Superstar" husband. (*Id.*).

According to Ms. Longoria, "[t]hat we know of, [she] is depicted in the photo in Exhibit 'G' to promote Taco Mex on its Facebook page."  (Complaint, ¶ 45).  The image "was intentionally altered to make it appear that Longoria was either an employee working at Taco Mex, that she endorsed Taco Mex, or that she was otherwise associated or affiliated with Taco Mex." (*Id.*). Ms. Longoria has never worked at or been affiliated with Taco Mex, nor has she been associated with the restaurant or its nightclub. (Complaint, ¶ 46). She has never been compensated for the Defendant's "unauthorized use of her Image," and she has suffered damages-and will continue to do so-because of the unauthorized use." (*Id.*). *See also* ECF No. 1-7 ("Exhibit G").

2.   *Modeling Industry*

It is Plaintiffs' understanding that there is a "particularized methodology and process" that must be considered when hiring a professional model within the industry. (Complaint, ¶ 57). Namely, there are negotiations between the model (through their agency) and the potential client as to the fee the model will be paid for their services. Some of the factors that are taken in consideration include: (a) the experience and caliber of the model, (b) length and location of the

photoshoot, (c) the client's license to use the images that result from the photoshoot, and (d) the length of time (i.e., "term") that the client is permitted to use said images, (e.g., "one, two, or three year terms […].". (Complaint, ¶¶ 58, 59).

### 3. Allegations Related to Defendant and Its Conduct

#### a. General

Defendant Erick & Edwin is a Maryland corporation registered to conduct business in the State, and "upon information and belief" operates Taco Mex, which is located in Silver Spring, Maryland. (Complaint, ¶¶ 7, 17).

Plaintiffs allege that Defendant operates a "so-called Night Club," and is in the business of selling alcohol and food in a sexually-charged atmosphere at Taco Mex. (Complaint, ¶ 47). Defendant owns and operates the social media accounts of Taco Mex (i.e., Facebook, Twitter, and Instagram) so as to promote the business and attract patrons. (Complaint, ¶¶ 48, 49). Defendant did this for "their(sic) own commercial and financial benefit." (Complaint, ¶ 50).

#### b. Misappropriation of Plaintiffs' Images

Plaintiffs generally allege that Defendant, without their knowledge, misappropriated and altered images of them and publicized the images in advertising to promote activities held at Taco Mex, specifically at its night club. (Complaint, ¶¶ 1, 21, 23). Defendant misappropriated and unlawfully used their images to make it seem as though they "worked at, endorsed, or were otherwise associated or affiliated with" its night club, operates on the premises of its Taco Mex. (Complaint, ¶¶ 4, 21). Defendant knew that none of Plaintiffs were ever affiliated with or employed by Taco Mex and that none of the Plaintiffs ever endorsed Taco Mex. Yet, Defendant misappropriated and altered Plaintiffs' images to make it appear that Plaintiffs worked for, endorsed, or were associated with Taco Mex, and never compensated Plaintiff for the use of their

8

images. (Complaint, ¶¶ 53-56).

Defendant has "used, advertised, created, printed, and distributed" Plaintiffs' images to "creat[e] the false impression with the public" that the Plaintiffs were affiliated in some capacity with Taco Mex. (Complaint, ¶ 51). The purpose was to further promote, market, and attract business to Taco Mex to obtain certain benefits from the false impressions created so that Defendant could in turn, receive "increased promotional, advertising, marketing, and other public relations benefits," as well as to gain notoriety and publicity, and increase in revenue and profit for Defendant. (Complaint, ¶ 52).

### c.   Failure to Consult and Compensate Plaintiffs for Use of their Images

Plaintiffs allege that they were never contacted by Defendant to request use of any of their images. (Complaint, ¶¶ 63, 64). In certain instances, Plaintiffs allege that Defendant used images that "came from Plaintiffs' own social media pages" that Plaintiffs used for personal and professional growth. (Complaint, ¶ 25). Plaintiffs also assert that Defendant's use of their images violated their rights to privacy and publicity, and has "permanently deprive[d]" Plaintiffs of their right to govern the use of their images. (Complaint, ¶¶ 60, 66).

Further, Plaintiffs allege that they did not receive any form of compensation, income, or "any benefit" from Defendant for the use and "commercialization" of their images. (Complaint, ¶¶ 24, 54-56, 61). Rather, Plaintiffs allege that the false impression that they are affiliated with Defendant has "substantially injured their careers and reputations." (Complaint, ¶ 62). Defendant's alleged unauthorized use of Plaintiffs' images was solely for Defendant's "own commercial and financial benefit." (Complaint, ¶ 50).

### B. Procedural Background

On November 26, 2024, Plaintiffs filed a Complaint against Erick & Edwin. (ECF No. 1). The Complaint advances eight causes of action. In particular, Plaintiffs allege violations of the following laws: (a) Count I advances a claim under Section 43 of 15 U.S.C. § 1125 (the "Lanham Act"), specifically false association, in violation of 15 U.S.C. § 1125(a)(1)(A); (b) Count II advances a false advertising Lanham Act claim, in violation of 15 U.S.C. § 1125 (a)(1)(B); (c) Count III alleges a violation of Plaintiffs' right to privacy under Maryland common law; (d) Count IV alleges a violation of Plaintiffs' right to privacy, in violation of the Allen Toussaint Legacy Act, La. R.S. 51:470, et. seq.; (e) Count V alleges that Defendant used Plaintiffs' images on its website and in its social media accounts to mislead the public into believing that Plaintiffs were affiliated and/or employed by the night club, which allegedly are unfair or deceptive trade practices that violate the Maryland Consumer Protection Act, Md. Code, Comm. Law §13-301; (f) Count VI alleges defamation, in violation of Maryland law; (g) Count VII advances negligence and *respondeat superior* claims under Maryland law, alleging that Defendant breached a duty to have policies/procedures governing the use of individuals' images/likeness and intellectual property in its advertising materials to ensure that such uses were not deceptive/misleading, which harmed Plaintiffs; and (h) Count VIII alleges that Defendant was unjustly enriched by its unlawful use of Plaintiffs' images, in violation of Maryland law; Count IX is a *quantum meruit* claim.

Attached to the Complaint are seven exhibits, Exhibits A-G, which are purportedly images of the Plaintiffs. (ECF Nos. 1-1 through 1-7).[3]

---

[3] In the Complaint, Plaintiffs do not specifically plead the dates that Defendant violated the law, nor do they plead when they discovered that these images were posted. Reviewing the exhibits appended to the Complaint reveals that Defendant misappropriated Plaintiffs' images on the following dates: 2016 (Guerra-Exh. A); 2013 (Mayes-Exh. B); 2016 (Sampedro-Exh. C); 2024 (Gaxiola- Exh. D); 2020 (Cañas-Exh. E); 2015 (Skinner-Exh. F); and 2013 (Longoria-Exh. G). (ECF Nos. 1-1 through 1-7). The Complaint was filed on November 26, 2024. The Lanham Act does not contain a statute of limitations for Section 43(a) claims. Thus, a court can use the most analogous state statute of limitations. *CMT USA, Inc. v. Apex Tool Grp. LLC*, __ F. Supp. 3d __, Civ. No. 24-CV-00137-TMR-DCK, 2025 WL

In the Complaint, Plaintiffs seek the following forms of relief: (1) actual damages related to Counts I-IX; (2) an order permanently enjoining Defendant from using Plaintiffs' images; (3) punitive and treble damages under the Lanham Act and "S.C. Code Ann. § 39-5-10, et. seq. (sic);" and attorneys' fees and costs "pursuant to the Lanham Act. . .and S.C. Code Ann. § 39-5-10, et. seq. (sic)." [4] (Complaint, ¶¶ 67-166).

On January 10, 2025, summonses were returned as executed, having been properly served on the Defendant on January 4, 2025. (ECF No. 4). Thus, the deadline for Defendant to file a responsive pleading within the 21-day period provided by Federal Rules of Civil Procedure 4 and 12(a)(1)(A)(i) was January 27, 2025. On February 11, 2025, Judge Chuang issued an Order directing Plaintiffs to file and serve on the Defendant, within 14 days of the date of the Order, a motion for Clerk's entry of default pursuant to Fed. R. Civ. P. 55(a) or to show cause as to why such motion would be inappropriate (ECF No. 5).

On February 25, 2025, Plaintiffs filed a Motion for Clerk's Entry of Default against the Defendant pursuant to Fed. R. Civ. P. 55(a). (ECF No. 6). On February 26, 2025, the Clerk of the Court granted the Motion for Clerk's Entry of Default by entering an order of default and issuing a notice of default as to the Defendant. (ECF Nos. 7, 8).

---

3687580, at *13 (W.D.N.C. Dec. 19, 2025). In Maryland, a civil action "shall be filed within three years from the date it accrues." Md. Code Ann., Cts. & Jud. Proc. § 5-101. Tort actions other than libel and slander shall be filed within three years of the date that they accrue. Md. Code Ann., Cts. & Jud. Proc. § 5-101. The statute of limitations for libel and slander is one year. Md. Code Ann., Cts. & Jud. Proc. § 5-105. The statute of limitations for unjust enrichment claims is three years. Md. Code Ann., Cts. & Jud. Proc. § 5-101. Thus, if the exhibits contain the only dates that Defendant misappropriated Plaintiffs' images, it would seem that some of Plaintiffs' claims would be time-barred. However, the statute of limitations is an affirmative defense that a defendant must raise by way of its answer otherwise that defense is waived. *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653–54 (4th Cir. 2006) Here, because Defendant has failed to file an answer or otherwise respond, I am precluded from considering the defense. *Id.* at 653–54. Relatedly, per the discovery rule in Maryland, a plaintiff's cause of action accrues when she has actual knowledge or reasonably should have known of the wrongdoing. *Poffenberger v. Risser*, 290 Md. 631, 636 (1981). Had discovery proceeded, Plaintiffs might have established that they discovered the misappropriated images after the dates identified in the exhibits.

[4] As a preliminary matter, the undersigned finds that the Complaint does not advance a claim that South Carolina law was violated. *See* ECF No. 1 Accordingly, the undersigned recommends that the district court decline to award damages, attorneys' fees and costs under this statute.

On April 9, 2025, Judge Chuang issued an Order directing the Plaintiffs to file and serve on the Defendant a Motion for Default Judgment within fourteen days of the Order, or show cause as to why such motion would be inappropriate. (ECF No. 9). Pursuant to the requests of the Plaintiffs, the deadline was ultimately extended to May 16, 2025. (*See* ECF Nos. 10-13).

On May 16, 2025, Plaintiffs filed the Motion. (ECF No. 14). In the Motion, Plaintiffs advance four arguments. First, that because Defendant has failed to appear in this case and defend against the claims, then there inaction "should constitute an admission that they (sic) did not have the consent required to use Plaintiffs' images in advertising." (Motion, p. 4). According to Plaintiffs, then, the Court should enter default judgment against Defendant for all claims asserted in the Complaint. (*Id.*).  Second, that they have set forth sufficient evidence to entitle them to the award of damages against Defendant. (*Id.*). Alternatively, should the district court find that Plaintiffs have failed to meet their burden on damages, then they ask for hearing to determine damages. Third, Plaintiffs have met their burden to establish that they are entitled to an order permanently enjoining Defendant from using their images in advertising. (*Id.*).  Finally, Plaintiffs seek an order awarding them "all costs and attorneys' fees incurred prosecuting this action," and seek "a reasonable time following entry of the Court's judgment to apprise the Court of those costs and fees." (Motion, p. 5).

## II.    DISCUSSION

### A.  Default and Default Judgment

Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") governs default judgments. There are two steps to this process. First, a plaintiff can file a motion under Fed. R. Civ. P. 55(a), asking the Clerk of the Court to enter judgment against a defendant who has failed to "plead or otherwise defend [against the lawsuit]." *United States v. Moradi*, 673 F.2d 725, 727

(4th Cir. 1982). To support the motion, the plaintiff must file an affidavit or "otherwise" demonstrate that a defendant has failed to defend against the action. Fed. R. Civ. P. 55(a). If a plaintiff establishes that a defendant has failed to defend or plead, then the Clerk of the Court must enter an order of default. (*Id.*).

If an order of default is entered, the defendant is deemed to have admitted the plaintiff's factual allegations, as long as they are well-pleaded. *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008); *Dominion Fin. Servs., LLC v. Pavlovsky*, 673 F. Supp. 3d 727, 740 (D. Md. 2023)(emphasis supplied). However, even "when a court has entered default against a defendant, a plaintiff is not automatically entitled to have a default judgment entered." *Dominion Fin. Servs.,* 673 F. Supp. 3d at 741. Rather, a court still has an obligation to "determine whether those unchallenged factual allegations constitute a legitimate cause of action and support the relief sought in the action." *Wilson v. Daniels*, Civ. No. 0:21-3670-CMC-PJG, 2023 WL 3872005, at *2-3 (D.S.C. May 10, 2023), *report and recommendation adopted,* Civ. No. 0:21-CV-3670-CMC, 2023 WL 3867210 (D.S.C. June 7, 2023)(citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001)).

During the second step of the process, a plaintiff applies for default judgment pursuant to Fed. R. Civ. P. 55(b). Although liability has been established, any allegation concerning the amount of damages is not deemed admitted just because a defendant fails to deny in a required responsive pleading. Fed. R. Civ. P. 8(b)(6). Thus, in a default judgment scenario, "'[c]laims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed.'" *Trustees of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, Civ. No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011). However, where the record supports the damages requested. In such a case, a court

may award damages without a hearing. *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, Civ. No. NKM-09-0004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that no evidentiary hearing on damages is needed based on moving party's affidavit and printout submissions establishing amount of damages sought); *DirecTV, Inc. v. Yancey*, Civ. No. MFU-404-11, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that where sufficient evidence exist to support damages, "[a] hearing in open court is not required").

## III.   ANALYSIS OF THE CAUSES OF ACTION TO DETERMINE LIABILITY

As held above in Section II.A, a plaintiff is entitled to default judgment only if the allegations in the complaint are well-pleaded. *Wilson, supra*, 2023 WL 3872005, at *2-3. In addition, even after entry of default, a court must still determine "whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688.1 (4th ed. 2023).

For the reasons set forth herein, I recommend that the district court find that Plaintiffs' allegations, when accepted as true, are well-pleaded enough to establish Defendant's liability only as to Counts I-III, VI, and VIII. Thus, Plaintiffs are entitled to damages and injunctive relief for these claims.  In addition, for the reasons set forth below, I recommend that the district court find that Plaintiffs' allegations, even when accepted as true, are insufficiently pleaded to establish Defendant's liability as to Counts IV-V, VII, and IX.

In the following sections, then, I analyze each claim and whether Plaintiffs are entitled to relief.

14

### A. Counts I-II: False Advertising and False Association

Count I of the Complaint alleges a violation of the false association provision in the Lanham Act. The applicable subsections of the statute provide that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*See* 15 U.S.C. § 1125(a)(1)(A).

Count II of the Complaint alleges a violation of the false advertising provision in the Lanham Act. The applicable subsections of the statute provide that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> ….
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*See* 15 U.S.C. § 1125(a)(1)(B).

To proceed with a Lanham Act claim under the sections identified above, a plaintiff must first advance claims that "come within the zone of interests" of the statute. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131-32 (2014). Next, the law is clear that a

15

plaintiff must allege that her damages were "proximately caused by [a defendant's] violations of the [Lanham Act]." *Lexmark*, 572 U.S. at 132-33; *see also Belmora, LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 707 (4th Cir. 2016).

### 1.  *False Advertising: Zone of Interest and Elements*

A court examines the Lanham Act's stated purpose in in order to determine whether a plaintiff's claim fails within the "zone of interests." *Belmora*, 819 F.3d at 707. For a false advertising claim, one of the purposes of the Lanham Act is to "protect persons engaged in commerce from unfair competition." *Lexmark*, 572 U.S. at 131; s*ee also* 15 U.S.C. § 1127.  Under this theory, then, for a plaintiff's claim to fall within the zone of interest of 15 U.S.C. § 1125(a)(1)(B), a plaintiff "must allege an injury to a commercial interest in reputation or sales." *Lexmark*, 572 U.S. at 131.

The elements required to establish a false advertising claim are: (1) the defendant made a false or misleading description of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products. *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015)(quoting *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011).

### 2.  *False Association: Zone of Interest and Elements*

For a plaintiff's claim to fall within the zone of interest of the Lanham Act, a plaintiff must allege that, e.g., a deceptive and misleading use by a defendant of her image or mark in commerce.

*See* 15 U.S.C. § 1127. Under this theory, then, a plaintiff "must allege an injury to a commercial interest in reputation or sales." *Lexmark*, 572 U.S. at 131.

The elements required to establish a false association claim are: "(1) the defendant used the plaintiff's word, term, name, symbol, device or any combination thereof in interstate commerce in connection with goods and services; (2) the defendant's use of the plaintiff's word, term, name, symbol, device or any combination thereof was likely to cause confusion, mistake or deception as to the association of the defendant with the plaintiff, or the sponsorship, or approval of defendant's goods and services; and (3) the plaintiff is, or is likely to be, damaged by these acts." *Davalos v. GGC-Baltimore, LLC*, Civ. No. JRR-24-1733, 2025 WL 266673, at *5 (D. Md. Jan. 22, 2025)(citing *Ullah v. Linkenauger*, Civ. No. 20-634 (AJT/JFA), 2020 WL 9459338, at *3 (E.D. Va. Oct. 2, 2020)). At least one court has held that a Lanham Act false association claim is not limited to use of a written word or statement. Rather, such a claim can include an advertisement that includes an image of a plaintiff. *Geiger v. C&G of Groton, Inc.*, 424 F. Supp. 3d 276, 293 (D. Conn. 2019).

### 3. *Analysis*

Reviewing the Complaint, I first note that it appears that in drafting Counts I-II, counsel seems to have mixed up the statutory citations and descriptions of the parts of the Lanham Act that have been violated. For instance, a review of the language in paragraphs 69-78 (listed under Count I, false association) shows that the words are more accurately characterized as pleading false advertising, and a review of the language in paragraphs 82-89 (listed under Count II, false advertising) shows that the phraseology is more accurately described as pleading false association.

Untangling this sloppy pleading, and taking all of the facts as true, I find that I can reasonably infer from their allegations that Plaintiffs have sufficiently pleaded an injury within the

17

zone of interests contemplated by the Lanham Act. Plaintiffs allege that the Defendant's unauthorized use of their images damaged their reputations and caused them economic injury. (Complaint, ¶¶ 21, 24, 47, 67-74, 78). I can also reasonably infer that Plaintiffs' images came from their own social media pages and were "misappropriated and intentionally altered by Defendant" and that the Defendant used the images to make it appear that Plaintiffs worked for or endorsed Taco Mex, which deprived them of income." (Complaint, ¶¶ 21, 24, 25, 78). The damage occurred because Taco Mex was a nightclub "engaged in the business of selling alcohol and food in a sexually charged atmosphere. (Complaint, ¶ 47). Thus, because Plaintiffs are models in a business that places "a high degree of value on their good will (sic) and reputation, which is critical to maximizing their earning potential, book modeling contracts, an establish each of their individual brands," they did not choose to associate with Defendant because they are highly selective about the brands that they choose to associate with, opting to associate with reputable brands and companies. (Complaint, ¶¶ 20, 71). Because the Defendant has failed to respond to or otherwise defend this action, and taking the facts as true, I recommend that the district court could find that Plaintiffs have advanced at least one claim within the zones of interest in the statute.

If the Plaintiffs are advancing a false advertising claim, taking the facts as true, and drawing all reasonable inferences from those facts, I find that Plaintiffs have pleaded just enough to allege that Defendant made a false/misleading representation of fact by posting on Facebook (affecting interstate commerce) Plaintiffs' images in commercial advertisements, which had the tendency to deceive, and plaintiff was likely suffered some economic or reputational injury, which was proximately caused by the Defendant. (Complaint, ¶¶ 21, 24, 76-96). If the Plaintiffs are advancing a false advertising claim, taking the facts as true, and drawing all reasonable inferences from those facts, I find that Plaintiffs have pleaded just enough to allege that Defendant used Plaintiffs' images

in advertisements in interstate commerce (posting on Facebook), the Defendant's use of these images was likely to confuse or deceive by suggesting that Plaintiffs were associated with or approved of the events hosted at Taco Mex, and Plaintiffs were likely to be damages by these acts. (Complaint, ¶¶ 21, 24, 25, 76-96).

Again, because Defendant has failed to answer or otherwise defend again this action, I recommend that the district court finds Plaintiffs' allegations to be sufficiently conceded as to state a claim under the Lanham Act.  Accordingly, I recommend that the district court grant Plaintiffs' motion for default judgment as to their Lanham Act claims.

### B.  Count III: Common Law Right to Privacy

Plaintiffs allege that Defendant "has violated each Plaintiff['s] common law right to privacy under Maryland law" by "appropriating each Plaintiff['s] likeness for commercial purposes without authority or consent" by "publishing their image and likeness on Defendant['s] website or related social media accounts" in order to "attract business [and] generate revenue for Defendant."  (Complaint, ¶¶ 98-100, 102).

I examined the Restatement of Torts, which "provides that '[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy.'" *Barnhart v. Paisano Publications, LLC*, 457 F. Supp. 2d 590, 595 (D. Md. 2006) (quoting Restatement (Second) of Torts § 652C (1977)); *see Lawrence v. A.S. Abell Co.*, 475 A.2d 448, 453 (Md. 1984).  As I understand it, this tort is intended to protect against a person using the identity of another to advertise his business or for other commercial purposes. Thus, an appropriation claim does not arise from incidental uses of a person's identity or likeness. *Barnhart*, 457 F. Supp. 2d at 595.  As set forth in the Restatement Second, "the value of a person's image is not [always deemed to be] appropriated." *Id.* In particular:

19

> when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation.

*Id.* at 595-96.  Instead, the value of one's image is appropriated:

> when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or likeness that the right of privacy is invaded . . .

*Barnhart*, 457 F. Supp. 2d at 596.

Here, I find that Plaintiffs adequately allege an invasion of their right of privacy by appropriating their likenesses for commercial purposes without authority or consent.  (Complaint, (Complaint, ¶¶ 21, 24, 97-110).  Accordingly, I recommend that the district court grant Plaintiffs' motion for default judgment as to Count III, construing this claim as a tort claim for misappropriation.

### C.  Count IV: Allen Toussaint Legacy Act.

Plaintiffs allege a violation of their rights to privacy "and/or" a violation of the Allen Toussaint Legacy Act.  (Complaint, ¶¶ 111-120).

The Allen Toussaint Legacy Act was enacted in 2022 and is set forth in La. R.S. 51:470.1 through 51:470.6.  *See Haley v. Henderson*, 414 So. 3d 914, 918 (La. App. 2025).  Under the Legacy Act, "[e]very individual has a property right in connection with the use of that individual's identity for commercial purposes." La. R.S. 51:470.3(A). Pursuant to the pertinent portions of the definitions section:

> (3) "Commercial purposes" means the use of an individual's identity for any of the following purposes:
> (a) On or in connection with products, merchandise, goods, services, commercial activities, or performances.
> (b) For advertising, soliciting, or promoting products, merchandise, goods, services, commercial activities, or performances.
> (c) For the purpose of fundraising.

. . . .

> (6) "Identity" means an individual's name, voice, signature, photograph, image, likeness, or digital replica.
> (7) "Individual" means a living natural person domiciled in Louisiana or a deceased natural person who was domiciled in Louisiana at the time of the individual's death.

La. R.S. 51:470.2. In addition:

> Identity rights terminate as a matter of law upon the earlier of the following circumstances:
> (1) Proof of nonuse of the individual's identity for commercial purposes by an individual's authorized representative for a period of three consecutive years following the individual's death.
> (2) Fifty years following the individual's death.

La. R.S. 51:470.3(E).

A violation of the statute occurs if a person "uses an individual's identity for a commercial purpose in Louisiana without having first obtained consent from the individual or the individual's authorized representative." La. R.S. 51:470.4(A).

In addition, a court may exercise supplemental jurisdiction "in any civil action of which the district courts have original jurisdiction . . . over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Here, reviewing the Complaint, I cannot find a basis for the district court to entertain this count because Plaintiffs have not alleged a nexus to the state of Louisiana that would give rise to a cause of action under the Allen Toussiant Legacy Act. Accordingly, I recommend that the district court decline to find Defendant liable for Count IV.

### D.  Count V: Maryland Consumer Protection Act

Plaintiffs raise a claim under the Maryland Consumer Protection Act (MCPA), Md. Code Ann. Comm. Law § 13-301 *et seq.*, that Defendant's "advertising practices cause substantial injury

21

to consumers by creating the false impression that Plaintiffs are entertainers at, endorse, or are otherwise affiliated with, Defendant." (Complaint, ¶ 129).

The MCPA provides that, "[i]n addition to any action by the Division or Attorney General authorized by this title and any other action otherwise authorized by law, any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title." Md. Code Ann., Com. Law § 13-408(a).  To that end, unfair, abusive, or deceptive trade practices include any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." *Id.* § 13-301(1).  Moreover, "[a]ny person who brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees." *Id.* § 13-408(b).

Only consumers have standing under the MCPA. *Penn-Plax, Inc. v. L. Schultz, Inc.*, 988 F. Supp. 906, 909 (D. Md. 1997); *accord Scotch Whisky Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 597 n.9 (4th Cir. 1992) (noting that the MCPA only provides a cause of action for consumers). A consumer is "an actual or prospective purchaser, lessee, or recipient of consumer goods, consumer services, consumer realty, or consumer credit." Md. Code Ann., Com. Law § 13-101(c)(1).  A consumer bringing a private action under § 13-408 must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768–69 (D. Md. 2012) (citing, *inter alia*, *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 143 (2007)), *aff'd per curiam sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013); *see Lloyd*, 397 Md. at 143 (finding that a plaintiff must demonstrate that he or she "suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation").

22

Even when construing the facts in favor of the Plaintiffs, *see* Complaint, ¶¶ 121-132, Plaintiffs do not allege that they are consumers who relied on Defendant's misrepresentation that in turn caused them actual injury. Accordingly, I recommend that the district court decline to find Defendant liable for Count V.

### E.  Count VI: Defamation

Under Maryland law, to present a prima facie case of defamation, a plaintiff must establish four elements: (1) the defendant made a defamatory statement to a third person; (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm.  *Offen v. Brenner*, 935 A.2d 719, 723–24 (Md. 2007). Under the first element, a defamatory statement "tends to expose a person to public scorn, hatred, contempt[,] or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Id.*

In addition, there are two types of defamatory statements: *per se* and *per quod*. *Metromedia, Inc. v. Hillman*, 285 Md. 161, 172–73 (1979).  In general, a statement is defamatory *per se* when the hearer can "impute the defamatory character" from the words themselves and no further inference or context is necessary.  *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 441 (Md. 2009) (quoting *Metromedia*, 285 Md. at 172-73); *see also Shulman v. Rosenberg*, Case No. 24-C-16-001867, 2017 WL 5172642, at *9 (Md. Ct. Spec. App. Nov. 8, 2017).  In such a case, the injurious nature of the words is a "self-evident fact of common knowledge of which the court takes judicial notice," such that it does not need to be "pleaded or proved."  *M & S Furniture Sales Co. v. Edward J. De Bartolo Corp.*, 241 A.2d 126, 128 (Md. 1968).  By contrast, defamation *per quod* requires the plaintiff to allege "extrinsic facts" that establish the defamatory character of the words through context or innuendo.  *Metromedia*, 285 Md. at 171.  Whether a statement is defamatory *per se* or *per quod* is a question of law.  *Shapiro v. Massengill*, 661 A.2d 202, 217 (Md. Ct. App.

1995); *see also Clayton v. Fairnak*, Civ. No. JKB-18-2134, 2018 WL 6446440, at *2 (D. Md. Dec. 10, 2018).

Under the second element, a statement is "false" if it was "not substantially correct." *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012). The plaintiff bears the burden of establishing falsity. *Batson v. Shiflett*, 602 A.2d 1191, 1213 (Md. 1992); *Lewis-Davis v. Bd. of Educ. of Baltimore Cnty.*, Civ. No. ELH-20-0423, 2021 WL 4772918, at *22 (D. Md. Oct. 13, 2021).

Under the third element, fault may be based on negligence or constitutional malice, sometimes referred to as "actual malice." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Batson*, 602 A.2d at 1210. Actual malice requires that the defendant made the statement "with actual knowledge" that the statement is false, "coupled with [his or her] intent to deceive another by means of that statement." *Piscatelli*, 35 A.3d at 1148 (quoting *Ellerin v. Fairfax Sav. F.S.B.*, 652 A.2d 1117, 1129 (Md. 1995)) (internal quotation marks omitted). Negligence requires that the defendant failed to "act as a reasonable person under the circumstances." *Henderson v. Claire's Stores, Inc.*, 607 F. Supp. 2d 725, 731 (D. Md. 2009).

Under the fourth element, "[t]he standard for establishing harm is different depending on whether the statement was defamatory *per se* or defamatory *per quod*." *Rorie v. Bd. of Educ. of Charles Cnty.*, 653 F. Supp. 3d 217, 242 (D. Md. 2023). Harm is presumed if the statement is defamatory *per se*. In contrast, if the statement is defamatory *per quod*, the plaintiff must prove that "the words caused actual damages." *Id.* (citing *Metromedia*, 400 A.2d at 1123; *Samuels v. Tschechtelin*, 763 A.2d 209, 245 (Md. Ct. App. 2000); *Gooch v. Md. Mech. Sys., Inc.*, 567 A.2d 954, 961-62 (Md. Ct. App. 1990).

24

In the instant case, Plaintiffs allege that Defendant operated "a so-called Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere." (Complaint, ¶ 47). Plaintiffs allege that publication of their images and likenesses constitutes defamation because the publication "falsely accuses Plaintiffs of having acted in a manner – i.e., working as an *entertainer* and/or endorsing Defendant's business which would subject each Plaintiff[] to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff[] of confidence and friendly intercourse in society." (Complaint, ¶ 141 (emphasis added)). Plaintiffs allege that because the publication falsely portrays each Plaintiff as an entertainer, it imputes unchastity to her and is therefore defamation per se. (Complaint, ¶ 144). Plaintiffs further allege that the publication would tend to injure Plaintiffs in their trade, business, and profession as a professional model. (Complaint, ¶ 142).

Accepting the allegations as true, I recommend that the district court find Defendant liable for Count VI.

### F. Count VII: Negligence

In order to sustain a claim for an action in negligence, a plaintiff must allege facts that establish: "(1) that the defendant was under a duty to protect the plaintiff from injury; (2) that the defendant breached that duty; (3) that the plaintiff suffered actual injury or loss; and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *McNack v. State*, 920 A.2d 1097, 1106 (Md. 2007)(further citation omitted).

In this case, Plaintiffs allege that Defendant "breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that

the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive." (Complaint, ¶ 150). However, Plaintiffs' allegations establish that they have no relationship with Defendant; instead, Plaintiffs allege that they do not know the Defendant. (Complaint, ¶¶ 146-153). Thus, I cannot find that Plaintiffs have well pleaded how Defendant, a stranger to them, owed them a duty of care to implement policies and procedures.

Because Plaintiffs have not adequately pleaded the first element of a negligence claim, I recommend that the district court decline to find Defendant liable for Count VII.

### G. Counts VIII-IX: Unjust Enrichment and Quantum Meruit

In Maryland, "a claim for quantum meruit may be based on a contract implied in fact or a contract implied by law, which is often referred to as unjust enrichment." *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 598 (D. Md. 2018). In particular, there are "two types of quantum meruit claims, one based on an implied-in-fact contract (usually designated as quantum meruit) and the other based on an implied-in-law contract (usually designated as unjust enrichment)." *Sanders v. Mueller*, 133 Fed. Appx. 37, 42 n.3 (4th Cir. 2005). Thus, to prevail under either claim an implied contract must exist, which means that there must be "an agreement which legitimately can be inferred from the intention of the parties as evidenced by the circumstances and the ordinary course of dealing and the common understanding of men." *County Com'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94, 747 A.2d 600, 606 (citation and internal quotation marks omitted). Put another way, it has to be clear from the conduct of the parties that "a plaintiff, without being requested to do so, renders services under circumstances indicating that [s]he expects to be paid therefore, and defendant, knowing such circumstances, avails himself of [the] benefit of those services." *Dashiell*, 358 Md. at 95 n.6, 747 A.2d at 606 n.6 (citation omitted).

Reviewing the Complaint, it is true that Plaintiffs have pleaded that Plaintiffs conferred a benefit upon Defendant, that Defendant knew of the benefit, and that it would be inequitable for Defendant to retain that benefit without compensating Plaintiffs (Complaint, ¶¶ 155-158, 160). However, Plaintiffs do not allege that they performed modeling services for the Defendant pursuant to an oral, implied-in-fact or implied-in-law contract. Because Plaintiffs have not adequately pleaded the existence of an implied-in-fact contract, I cannot recommend that the district court enter judgment in their favor on Count IX.

However, under Maryland law, a claim for unjust enrichment has three elements: (1) a benefit conferred upon the defendant by the plaintiff, (2) an appreciation or knowledge by the defendant of the benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value. *Lacks v. Ultragenyx Pharm., Inc.*, 734 F. Supp. 3d 397, 408 (D. Md. 2024) (citing *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007)).

Plaintiffs have pleaded that Plaintiffs conferred a benefit upon Defendant (Complaint, 1 ¶ 158), that Defendant knew of the benefit (Complaint, ¶¶ 155-157), and that it would be inequitable for Defendant to retain that benefit without compensating Plaintiffs (Complaint, ¶ 160). Thus, I recommend that the district court enter judgment in Plaintiffs' favor on Count VIII.

## IV.   RELIEF SOUGHT BY PLAINTIFFS

Plaintiffs seek three forms of relief: monetary damages, award of attorneys' fees and costs and entry of a permanent injunction. As explained herein, Plaintiffs have established that they are entitled to injunctive relief and damages. Thus, I recommend that the district court enter default judgment as to these requests. Regarding attorneys' fees and costs, I recommend that the district court fully brief the issues related to entitlement to the same.

### A. Permanent Injunction

Pursuant to the Lanham Act, a court faced with a false association or a false advertising claim is:

> vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable . . . to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title.

15 U.S.C. § 1116(a).  In addition, a plaintiff:

> seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order.

15 U.S.C. § 1116(a).

In order to obtain a permanent injunction, a party must "demonstrate 'actual success' on the merits, rather than a mere 'likelihood of success' required to obtain a preliminary injunction." *Mayor of Balt. v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12, (1987)). In order to obtain a permanent injunction, a movant must demonstrate: "(1) it has suffered an irreparable injury; (2) legal (as opposed to equitable) remedies are inadequate to compensate that injury; (3) an injunction is warranted after considering the balance of hardships between the parties; and (4) the public interest would not be disserved by entry of a permanent injunction." *ClearOne Advantage, LLC v. Kersen*, 756 F. Supp. 3d 30, 39 (D. Md. 2024)(quoting *Amoco Prod. Co.*, 480 U.S. at 546 n.12).

Having evaluated the Complaint, I find that Plaintiffs have met their burden in establishing the need for a permanent injunction that precludes the Defendant from continuing to use Plaintiffs' images without their permission. First, as held above, I recommend that the district court find that

Plaintiffs have prevailed, by default, on Counts I-III, VI, and VIII. Regarding irreparable harm, I find that Plaintiffs have met their burden. Specifically, Plaintiffs allege that Defendant runs a "so-called Night Club," and is in the business of selling alcohol and food in a sexually-charged atmosphere at Taco Mex. (Complaint, ¶ 47). Plaintiffs also allege that the false impression that they are affiliated with Defendant has "substantially injured their careers and reputations." (Complaint, ¶ 62).  Second, regarding the adequacy of legal remedies to compensate Plaintiffs from their injury, where, as here, Defendant has failed to defend against this action, I would recommend that the district court find a permanent injunction to be appropriate.  Third, Plaintiffs further allege that "Defendant's(sic) republicized Plaintiff's image and likeness on various occasions, via  different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint." (Complaint, ¶ 104).  Thus, I recommend that a permanent injunction is necessary in order to effectively disassociate Plaintiffs from the Defendant.  Finally, given the facts of this case, I do not find any harm to the public interest in recommending entry of a permanent injunction.  In sum, I recommend that the district court enter a permanent injunction enjoining the Defendant from its continued use of Plaintiffs' images.

### B.  Damages

Although liability has been established as to Counts I-III, VI and VIII as to Plaintiffs, the undersigned still had to determine whether the record supported the damages requested. *Pentech Fin. Servs., Inc.*, 2009 WL 1872535, at *2; *DirecTV, Inc.*, 2005 WL 3435030, at *2.

Under the Lanham Act, damages can be awarded "[w]hen a violation under section 1125(a)" has been established by a plaintiff. 15 U.S.C. § 1117(a).  The Lanham Act provided that a plaintiff who establishes a false association or a false advertisement claim is entitled to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."

*Id*. Similarly, Plaintiffs' state law claims for compensatory damages. *See generally McKeever v. Wash. Heights Realty Corp.*, 183 Nd, 216, 37 A.2d 305 (1944); *Doe v. Johns Hopkins Health System Corp.,* 274 F. Supp. 3d 355 (D. Md. 2017); *Chassels v. Krepps,* 174 A.3d 896, 906 (Md. Ct. Spec. App. 2017).

Here, Plaintiffs seek compensatory damages in the amount of $132,500 (Motion, p. 5). To support that amount, Plaintiffs submit a declaration from their valuation expert, Stephen Chamberlin, who "was engaged to evaluate and value retroactively the compensation that each Plaintiff should have received for the use of her images by the Defendant." (Motion, p. 5).

In his declaration, Mr. Chamberlin claims that he has served as a model and talent agent since in1989, during which he has represented "hundreds of the world's top models." (ECF No. 14-1, "Chamberlin Decl." ¶¶ 1-2). His "key functions include quoting, negotiating, and overseeing rates, work, and career development for all talent represented by the agencies with which [he has] worked on a regular basis," and he has become "intimately familiar with the model market, to quote work, negotiate deals and understand the particular factors driving the pricing for the particular work and the Models." (*Id*.). The purpose of his declaration is to "evaluate and value the compensation [that the Plaintiffs] would have and should have received for the use of [their images] by Taco Mex." Thus, his declaration is being offered "as to the fair market value of Defendant's use of each Plaintiff's image in promotional, marketing and advertising media, on websites, social media and other forum." (Chamberlin Decl. ¶¶ 2, 6). His declaration identifies the materials reviewed to aid him in determining the amounts of damages. (Chamberlin Decl. ¶¶ 7-12).

To calculate each Plaintiff's actual damages, Mr. Chamberlin "employed the same approach, methodology, and process that I would typically employ when determining what to charge a company or other entity that is interested in hiring models I represent." (Chamberlin Decl.

¶ 13). That methodology is contained in several paragraphs, and in a chart that he created. (Chamberlin Decl. ¶¶ 13-39; ECF No. 14-1, "Exh. 2," p. 22).

To determine fair market value, Mr. Chamberlin used the following formula: identified each Plaintiff's day rate for engaging in modeling (which ranged from $5,000/day to $10,000/day), multiplied that rate by the number of images (ranging from 1 to 2 images per Plaintiff), then multiplied that by the number of usages (e.g., advertisements or number of postings to social media). (*Id*.). According to Mr. Chamberlin, his calculations are based on "the fair market value of each [Plaintiff's] image for the specific appropriated use by the Club/Restaurant but does not calculate the damage or possible end of their career, damage to reputation, or loss of other clients and advertisers by the [Plaintiffs] being associated with this type of business." (Chamberlin Decl. ¶ 11).

Because Defendant has not defended against this action, I recommend that the district court find that the Defendant has forfeited the opportunity to challenge Mr. Chamberlin's expertise, methodology, and calculations. Relatedly, I recommend that the district court find that Plaintiffs have met their burden on establishing reasonable damages figures.[5]

## C. Attorneys' Fees and Costs.

As a preliminary matter, because the Complaint does not advance a claim that South Carolina law was violated, I recommend that the district court decline to award attorneys' fees and costs under this statute.

---

[5] Other district courts faced with default judgment scenarios have so found. *See, e.g., Cerny v. Costa Verde Corp.*, Civ. No. 21-10927 (ADB), 2022 WL 3566818, at * 3 (D. Mass. Aug. 18, 2022); *Hinton v. Completely Innocent LLC*, Civ. No. 21- 1019 (SPL), 2022 WL 80049, at *5 (D. Ariz. Jan. 7, 2022); *Sampedro v. Club Carribean LLC,* Civ. No. 19-12921, 2020 WL 13441623, at *1 (E.D. Mich. Apr. 9, 2020); *Gibson v. Cowboys Saloon Gainsville, LLC*, Civ. No. 18-138 (GRJ), 2020 WL 3055453, at *8 (N.D. Fla. Feb. 5, 2020); *Moreland v. A-Q-B, LLC*, Civ. No. 19-372 (ADA), 2019 WL 6727870, at *3 (W.D. Tex. Dec. 11, 2019).

As set forth herein, Plaintiffs are prevailing parties, but they have not identified any costs or amounts of attorneys' fees sought. (Motion, pp. 1-5). Plaintiffs seek leave to file a motion for attorneys' fees and other associated costs within 14 days of the date that the district court enters judgment in her favor. (Motion, p. 1). I recommend that the district court grant their request for additional briefing related to attorneys' fees and costs sought.

## V.   CONCLUSION

In sum, I respectfully recommend that the district court:

1) **GRANT IN PART AND DENY IN PART**, Plaintiffs' motion for default judgment, (ECF No. 14), as follows:

   a. **GRANT** the motion, as it relates to Counts I-III, VI, and VIII, entering default judgment on these counts against Defendant Erick and Edwin, Inc. d/b/a Taco Mex Restaurant a/k/a Taco Mex.

   b. **DENY** the motion, as it relates to Counts IV-V, VII, and IX for all Plaintiffs;

2) **ORDER**, that Defendant Erick and Edwin, Inc. d/b/a Taco Mex Restaurant a/k/a Taco Mex., and its officers, agents, servants, employees, and attorneys, be **PERMANENTLY ENJOINED** from using in commerce (including distributing promoting, advertising, and/or displaying), any image or likeness of Plaintiffs likely to cause confusion about whether Plaintiffs work for, or have ever worked for, been associated with or are associated with, the Defendant, and/or endorse or promote Taco Mex;

3) **ORDER**, that Defendant Erick and Edwin, Inc. d/b/a Taco Mex Restaurant a/k/a Taco Mex., shall remove any and all social media postings or advertisements that contain Plaintiffs' images or likenesses; and

4) **ORDER** counsel to file a separate petition for attorneys' fees and costs within a reasonable time identified by the district court.

Date: March 9, 2026                                    _____/s/_____
                                                       The Honorable Gina L. Simms
                                                       United States Magistrate Judge